UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INLAND REAL ESTATE DEVELOPMENT, LLC, n/k/a International Real Estate Development, LLC; IRED LOMBARD, LLC; IRED LaGRANGE, LLC; IRED CLARENDON HILLS, LLC; IRED ELMHURST, LLC; and INLAND DEVELOPMENT VENTURES, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 08-cv-7443 |
| Plaintiffs/<br>Counterclaim Defendants, | ) Judge John W. Darrah |
| v. | |
| HPD CAMBRIDGE, INC., | |
| Defendant/<br>Counterclaim Plaintiff, | |
| v. | |
| INLAND REAL ESTATE DEVELOPMENT CORP., n/k/a International Land Development Corp., | |
| Counterclaim Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are various entities in the Inland Real Estate Group of Companies. They brought this action against HPD Cambridge, Inc. ("HPD"), seeking a declaratory judgment that certain oral agreements with HPD were properly terminated and that Plaintiffs are not obligated to pay HPD for any work performed after the date of termination. Plaintiffs also claim that HPD breached certain oral development agreements.

HPD filed a counterclaim against Plaintiffs and an original action against Inland Real Estate Development Corp. ("Inland Corporation"), which is not a plaintiff in the original Amended Complaint (collectively, the "Counterclaim Defendants"). HPD alleges that Inland Corporation breached HPD's "Standard Development Agreement," which was provided to Inland Corporation and allegedly accepted by Inland Corporation's performance of its terms. HPD also alleges that *all* of the Counterclaim Defendants are part of a common enterprise and, thus, jointly liable for damages to HPD.

Three of the Counterclaim Defendants moved for partial summary judgment on HPD's counterclaim: Inland Corporation; Inland Development Ventures, LLC ("Inland Ventures"); and Inland Real Estate Development, LLC ("Inland Development") (collectively, the "Inland Movants"). That motion is presently before the Court.

## BACKGROUND

As a preliminary matter, it is necessary to address the Inland Movants' objections to HPD's Local Rule 56.1 submissions. The Inland Movants moved to strike portions of HPD's response to their statement of facts, as well as most of HPD's statement of additional facts and the supporting affidavit of HPD's president, David Sanders. On June 22, 2010, the Court denied those motions but ruled that the substance of the arguments raised in the motions to strike would be considered in resolving whether or not the challenged submissions would be considered in deciding the Motion for Summary Judgment.

The following day, HPD filed a motion "for Leave to File Supplemental Affidavit and Responses to Arguments of Counterclaim Defendants on Their Motion for Partial Summary Judgment," with the following documents attached as exhibits: (1) a supplemental affidavit of David Sanders, which purports to lay a foundation for documents previously filed in opposition to the Inland Movants' motion for summary judgment; (2) a response to the Inland Movants' motion to strike HPD's responses to their statements of undisputed material facts; (3) a response to the Inland Movants' motion to strike the original affidavit of David Sanders; and (4) a response to the Inland Movants' motion to strike HPD's statement of additional facts. On June 29, 2010, the Court granted HPD's motion (over objection) and granted leave for the Inland Movants to file a surreply. The Inland Movants filed their surreply on July 20, 2010, maintaining their position that much of HPD's submitted materials should be stricken.

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). The parties must provide "specific references" to evidence that supports their factual assertions. LR56.1(a)-(b). A district court is entitled to expect *strict* compliance with Local Rule 56.1. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

Here, the Inland Movants identify numerous deficiencies in HPD's submissions: first, HPD provides insufficient evidentiary support for many of its factual assertions; second, HPD repeatedly interjects argument into its purported undisputed facts and responses; and third, HPD fails to admit or deny a number of the Inland Movants' statements of undisputed material facts. The Inland Movants also argue that Sanders's affidavit is self serving and unsupported and that it improperly relies on unauthenticated documentary evidence.

Much of Sanders's affidavit contains legal arguments, hearsay interpretations of agreements between HPD and some of the Counterclaim Defendants, and "facts" that are not shown to be within Sanders's personal knowledge. These statements would not be admissible at trial and, therefore, do not warrant consideration on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

With few exceptions, Sanders's affidavit is the only evidentiary support HPD directly cites in support of its statement of additional facts. In some instances, the search for evidentiary support ends with the affidavit. In others, the relevant paragraphs in Sanders's affidavit cite to additional exhibits or transcripts that, ultimately, do not clearly support HPD's purported facts. For example, HPD asserts that it performed and billed for certain development services by certain dates and that most of those services were provided after Inland Corporation became involved with the project but before any other Inland Real Estate companies became involved. (*See* HPD 56.1(b)(3)(C) ¶ 12.) HPD

supports this assertion by citing to a single paragraph in Sanders's affidavit. Sanders's affidavit in turn provides a breakdown of services provided before and after Inland Corporation's involvement in the projects at issue in this litigation, citing four invoices for support. (*See* Docket No. 75, Ex. T ¶ 39.) No foundation for these invoices is provided; nor is any explanation provided as to the line items contained on each invoice or how it is possible to determine the monthly breakdown that would support HPD's assertion as to the amount of work that was performed before and after Inland Corporation's involvement in the projects. HPD's statement of facts is generally convoluted and confusing. The Court will not undertake the inefficient task of painstakingly combing through HPD's submissions, searching for factual support for and against its unsupported assertions. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (citation and internal quotation marks omitted).

HPD's responses to the Inland Movants' statement of facts are similarly deficient. In addition, many of HPD's responses are improperly argumentative. Moreover, HPD frequently presents argument without first admitting or denying the factual assertions to which it responds. Those statements of facts will be deemed admitted for purposes of summary judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (holding that a litigant's failure to dispute the facts set forth in its

opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment).

The Court will not rule on each of the Inland Movants' objections.[1] To the extent HPD fails to set forth statements of fact that comply with Local Rule 56.1, those factual assertions will be disregarded. To the extent HPD fails to dispute the facts set forth in the Inland Movants' statement in the manner dictated by Local Rule 56.1, those facts, if properly asserted, will be deemed admitted. With those guidelines in mind, the relevant undisputed facts are as follows.

HPD is a developer of mixed-use senior-housing projects. (IRED 56.1(a)(3) ¶ 2.[2]) David Sanders is HPD's president. (IRED 56.1(a)(3) ¶ 3.) In or around October 2003, Sanders met with Inland Corporation's senior vice president and others to discuss potential senior-housing business opportunities in the Chicago area. (IRED 56.1(a)(3) ¶ 39.) Of the Inland Real Estate entities named as Counterclaim Defendants, only Inland Corporation was in existence at that time. (HPD 56.1(b)(3)(C) ¶ 1.) Sanders represented that he had over twenty years' experience as a developer of residential properties that cater to senior citizens and that he had successfully developed such properties throughout the country. (IRED 56.1(a)(3) ¶ 40.)

---

[1] As discussed below, the Inland Movants have not carried their burden of showing that there is no genuine issue as to any material fact regarding HPD's counterclaim such that they are entitled to judgment as a matter of law. However, that outcome was not dependent on HPD's factual assertions. Indeed, the vast majority of HPD's factual assertions and responses were disregarded for purposes of this motion for summary judgment.

[2] The Inland Movants' Local Rule 56.1 Statement of Undisputed Material Facts is cited as "IRED 56.1(a)(3) ¶ __"; HPD's Response is cited as "HPD 56.1(b)(3)(B) ¶ __"; and HPD's Statement of Additional Facts is cited as "HPD 56.1(b)(3)(C) ¶ __."

As a result of their discussions in October 2003, Inland Corporation and HPD executed a "Proposed Agreement Between [Inland Corporation and HPD] for the Development of a Senior Housing Facility Preliminary Planning and Financial Feasibility" ("Feasibility Agreement"). (IRED 56.1(a)(3) ¶¶ 41, 42.) The Feasibility Agreement provided the parties would develop at least one senior-housing project and, specifically, that they would determine the best location for the facility, control a piece of property, rezone it (if necessary), program and design the project on a preliminary basis, and analyze it financially. (IRED 56.1(a)(3) ¶ 45.) The parties characterized the agreement as a "letter of intent" and expressly agreed that it "reflect[ed] the intent of the parties but d[id] not constitute any agreement by the parties to proceed with the project or the investigation of the project." (IRED 56.1(a)(3) ¶ 44.)

Inland Corporation and HPD disagree as to whether the Feasibility Agreement was "to jointly continue to assess the feasibility of at least one senior housing project on a site in Elmhurst, Illinois," as Inland Corporation asserts, or to "become development partners" in one or more such projects, as HPD argues. (IRED 56.1(a)(3) ¶ 41; HPD 56.1(b)(3)(B) ¶ 41.) Inland Corporation asserts that the parties intended for a partnership or limited liability company to be established for each project as an *ownership entity*, which would be responsible for acquiring, improving, maintaining, operating, managing, leasing, mortgaging, selling, and otherwise using or dealing in the exercise and control of the property for that particular project. (IRED 56.1(a)(3) ¶ 47.) HPD asserts that the purpose of those partnerships or limited liability companies was to serve as *operating entities* that would hold legal title to the property, market the facility

7

upon construction, maintain the property after construction, and maintain the facility upon completion. (HPD 56.1(b)(3)(B) ¶ 47.)

After executing the Feasibility Agreement, Inland Corporation and HPD proceeded with the assessment of a project in Elmhurst, Illinois, which they ultimately chose not to pursue. (IRED 56.1(a)(3) ¶ 52.) During that same approximate time frame, Inland Corporation and HPD also investigated the feasibility of other senior-housing projects that were to be located in Clarendon Hills and Oak Park, Illinois, as well as other sites in Elmhurst. (IRED 56.1(a)(3) ¶ 53.) After the feasibility phase of these sites was concluded, it was determined that HPD and Inland Corporation would further pursue projects in Elmhurst and Clarendon Hills. (IRED 56.1(a)(3) ¶ 54.) Inland Corporation paid its costs for the assessment of the Clarendon Hills site and the original Elmhurst site pursuant to the terms of the Feasibility Agreement. (IRED 56.1(a)(3) ¶¶ 62, 64.)

Four project-specific limited liability companies were formed pursuant to separate operating agreements: IRED Elmhurst, LLC ("IRED Elmhurst"); IRED Clarendon Hills, LLC ("IRED Clarendon Hills"); IRED LaGrange, LLC ("IRED LaGrange"); and IRED Lombard, LLC ("IRED Lombard") (collectively, the "Project LLCs"). (IRED 56.1(a)(3) ¶¶ 15, 21, 26, 32.) Inland Ventures is a managing member of all four Project LLCs. (IRED 56.1(a)(3) ¶¶ 17, 19, 23, 29, 30, 33, 35.) With the possible exception of IRED Clarendon Hills, HPD is also a member of all four Project LLCs.[3] (IRED 56.1(a)(3) ¶¶ 17, 19, 23, 29, 30, 33, 35.) Although Inland Corporation is a member of

---

[3] Inland Corporation states that it is the sole member of IRED Clarendon Hills. (IRED 56.1(a)(3) ¶ 23.) HPD disputes this and cites to an executed copy of the IRED Clarendon Hills Operating Agreement signed by representatives of Inland Ventures and HPD. (HPD 56.1(b)(3)(B) ¶ 23.)

8

Inland Ventures (IRED 56.1(a)(3) ¶ 9), neither Inland Corporation nor Inland Development is a member of any of the Project LLCs. HPD agreed to form the Project LLCs, provided suggested terms to be contained in the operating agreements for the Project LLCs, and agreed to the terms ultimately contained in the final operating agreements for each of the Project LLCs. (IRED 56.1(a)(3) ¶ 48.)

In the Feasibility Agreement, the parties agreed that all mortgages and deeds of trust granted by the partnerships or limited liability companies would be without recourse to Inland Corporation or HPD. (IRED 56.1(a)(3) ¶ 49.) In the operating agreements, the parties further agreed that the members of the Project LLCs would not be personally liable for the debts, liabilities, contracts, or other obligations of the Project LLCs. (IRED 56.1(a)(3) ¶ 50.)

Around the same time that HPD and Inland Corporation agreed to proceed with the projects in Elmhurst and Clarendon Hills, HPD had two other senior-housing projects underway in LaGrange and Lombard, Illinois, with another partner, Mid-America Development Partners, LLC ("MidCo"). (IRED 56.1(a)(3) ¶ 56.) MidCo's interest in those projects was later purchased by IRED LaGrange and IRED Lombard. (IRED 56.1(a)(3) ¶¶ 57, 58.) Each of the four development projects are now owned by the respective Project LLCs. (IRED 56.1(a)(3) ¶ 69.) Once they were established, the individual Project LLCs took certain actions with regard to the respective properties: (1) they borrowed the funds necessary to finance each project; (2) they acquired title to the real estate; (3) they executed all loan documents, contracts, and closing documents; (4) they obtained necessary zoning approvals; (5) they contracted for professional

services and the construction of improvements; and (6) they retained commercial brokers for the leasing of units within the respective projects. (IRED 56.1(a)(3) ¶ 68.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773

(7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

To prevail on a breach-of-contract claim, HPD must prove the following: (1) the existence of a valid and enforceable contract; (2) that HPD performed its obligations under the contract; (3) that the Counterclaim Defendants breached the contract; and (4) that HPD was harmed as a result. *Priebe v. Autobarn Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). Where the facts are not in dispute, the existence of a contract under Illinois law is a question of law which the trial court may decide on a motion for summary judgment. *Lewis-Connelly v. Bd. of Educ. of Deerfield Pub. Schs., Dist. 109*, 660 N.E.2d 283, 285 (Ill. App. Ct. 1996). In Illinois, a signed agreement is not always necessary to prove that an offer was accepted; a contract can be accepted through conduct, as well as through words. *See, e.g., Amelco Elec. Co. v. Midwest Corp.*, 351 N.E.2d 349, 354 (Ill. App. Ct. 1976); *Calo, Inc. v. AMF Pinspotters, Inc.*, 176 N.E.2d 1, 6 (Ill. App. Ct. 1961). The existence of an oral contract is a question reserved for the jury. *Yorke v. B.F. Goodrich Co.*, 474 N.E.2d 20, 22 (Ill. App. Ct. 1985).

## ANALYSIS

There are three types of purported agreements (or sets of agreements) at issue between HPD and the various Counterclaim Defendants: (1) the Feasibility Agreement, (2) the Standard Development Agreement, and (3) the operating agreements for the Project LLCs. The only agreement HPD alleges to have been breached, however, is

11

HPD's Standard Development Agreement.[4] HPD claims it presented that agreement to Inland Corporation and that Inland Corporation accepted it by performing in accordance with its terms.[5] None of the parties claim that a fully executed development agreement exists.

The Standard Development Agreement is attached to HPD's Counterclaim. It specifically mentions only the Clarendon Hills project and states that it is an agreement between the developer (specifically identified in the document as HPD) and the owner of the Clarendon Hills project (specifically identified as Inland Corporation). The agreement is not dated, nor is it signed by either party. HPD has not produced any Standard Development Agreement that references any of the other three projects.

The Inland Movants have not challenged HPD's evidence in support of its claim that HPD entered into a development agreement with Inland Corporation. Instead, they argue that any such agreement, if it did exist, would necessarily have been between HPD and the four Project LLCs set out above. But the fact that the individual Project LLCs were later formed to take actions consistent with the ownership and management of the properties at issue does not rebut HPD's claim that it had an earlier initial agreement with

---

[4] Although the Standard Development Agreement is the basis of this dispute, the parties devote a substantial portion of their arguments to disputing their respective intents in forming the Feasibility Agreement and the operating agreements for the four Project LLCs. The thrust of the Inland Movants' argument is that any alleged development agreements would have necessarily been between HPD and the owners of the various projects (i.e., the Project LLCs) and that none of the Inland Movants can be liable for breaching any such agreement. The Inland Movants contend that the Feasibility Agreement and the operating agreements support their position.

[5] The Plaintiffs' breach-of-contract claim is based on allegations that the Project LLCs were operating under various oral development agreements with HPD.

Inland Corporation to develop those properties. Nor does the later creation of the Project LLCs necessarily mean that Inland Corporation could not have breached such an agreement. Those factual issues must be resolved at trial. Accordingly, the Inland Movants' Motion is denied as to Inland Corporation.

With regard to Inland Ventures and Inland Development (both Plaintiffs in the original Amended Complaint), HPD argues that the theory that only the Project LLCs can be liable to HPD is in direct conflict with the Amended Complaint, in which it is alleged that HPD breached various oral development agreements with Inland Ventures and Inland Development.

In its counterclaim, the only entity with which HPD claims to have entered into a development agreement is Inland Corporation. Indeed, the only substantive allegation involving either Inland Ventures or Inland Development is as follows:

> Counterclaim Defendants are all part of a common enterprise and each Counterclaim Defendant is a mere continuation of its predecessor such that the liability of each Counterclaim Defendant is in law and in fact the liability of all Counterclaim Defendants.

(Counterclaim ¶ 33.)

The Inland Movants, however, do not challenge HPD's theory of successor liability. Instead, they simply renew their argument that the Project LLCs are the only entities that could possibly be liable for breaching a development agreement with HPD. Thus, HPD's only theory of liability as to Inland Development and Inland Ventures has not been factually rebutted. For that reason, the Inland Movants' Motion must be denied as to Inland Development and Inland Ventures.

Ultimately, after all reasonable inferences are construed in HPD's favor, the Inland Movants have not met their burden of demonstrating a complete absence of factual issues with regard to what, if any, development agreements were formed and which, if any, parties entered into those agreements with HPD. Accordingly, the Inland Movants' Motion for Partial Summary Judgment is denied.

## CONCLUSION

For the reasons discussed above, the Motion for Partial Summary Judgment, filed by Inland Real Estate Development Corp.; Inland Development Ventures, LLC; and Inland Real Estate Development, LLC, is denied.

Date: 8-24-10

JOHN W. DARRAH
United States District Court Judge